IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED R. AL-'OWHALI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 3:25-cv-235-NJR |
| ) | |
| DANIEL SPROUL and J. HUGHES, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

Defendants Dan Sproul and John Hughes, by and through their attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Assistant United States Attorney Kyle Oehmke, answers Plaintiff's Complaint (Doc. 1), as limited by the Court's threshold Order (Doc. 10), as follows:

1. <u>Parties</u>: Plaintiff Mohamed R. Al-'Owhali, #42371-054, is currently incarcerated at USP Florence High, P.O. Box 7000, Florence, Colorado 81226. Defendant Daniel Sproul ("Warden Sproul") is the Warden of FCI Marion, P.O. Box 2000, Marion, Illinois 62959. Defendant J. Hughes ("Nurse Hughes") is and RN ("registered nurse") at FCI Marion, P.O. Box 2000, Marion, Illinois 62959.

**Answer:** **Defendants admit Mohamed R. Al-'Owhali, Reg. No. 42371-054, is an inmate committed to the custody of the Federal Bureau of Prisons ("BOP"). Defendants further admit Al-'Owhali is currently incarcerated at the United States Penitentiary in Inez, Kentucky (referred to as "USP Big Sandy"). Defendants admit Daniel Sproul was employed by the BOP and was the Warden at the Federal Correctional Institution in Marion, Illinois ("FCI Marion")[1] at all times relevant to this case. Defendants admit John Hughes was employed by the BOP as a Registered Nurse and worked at USP Marion at all times relevant to this case. Defendants deny the balance of this allegation.**

---

[1] At the time of the allegations in the Complaint, FCI Marion was designated as a United States Penitentiary and was referred to as "USP Marion".

2. The defendants are sued in their individual capacities; the relief sought is compensatory, punitive and nominal damages.

> **Answer:** **Defendants admit Plaintiff sued Defendants in their individual capacities, and he seeks compensatory, punitive damages, nominal damages, and other relief. Defendants deny the balance of this allegation, including whether Plaintiff is entitled to any relief.**

3. <u>Jurisdiction:</u> The Court's subject matter jurisdictional over the allegations in this Complaint is based on 28 USC § 1331, because the claims for relief arise under the Religious Freedom Restoration Act ("RFRA") 42 U.S.C § 2000BB-1.

> **Answer:** **This allegation represents a legal conclusion to which no response is required.**

4. <u>Venue:</u> Venue is proper un the Southern District of Illinois under 28 USC § 1391(b) because a substantial part of the acts or omissions that give rise to Plaintiff's claims occurred in the Southern District of Illinois.

> **Answer:** **This allegation represents a legal conclusion to which no response is required.**

5. <u>Nature of the Action:</u> Warden Sproul and Nurse Hughes knowingly, intentionally, and maliciously violated my rights by forcefully breaking my sacred religious fasts on several occasions, imposing a substantial burden on me and my exercise of my religion, acts prohibited by the RFRA.

> **Answer:** **Defendants deny they violated Plaintiff's religious rights. Defendants further deny they placed a substantial burden on Plaintiff's exercise of his religion or committed any act prohibited by the Religious Freedom Restoration Act ("RFRA"). Defendants deny the balance of this allegation.**

## STATEMENT OF CLAIM (Doc. 10, pp. 2-6)

6. Mohamed R. al-'Owhali is a practicing Muslim with sincerely held Islamic beliefs (Doc. 1, p. 2).

    **Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

7. Al-'Owhali alleges that he was previously housed at USP-Florence Administrative Maximum ("ADX"), the supermax prison in Colorado (*Id.*).

    **Answer:** **Defendants admit Plaintiff was incarcerated at the ADX at various times prior to his incarceration at FCI Marion. Defendants deny the balance of this allegation.**

8. While housed at ADX and subject to severe restrictions on his communications and conditions of confinement, al-'Owhali alleges that he used various means to object to what he believed were illegal and harsh conditions including filing administrative remedies, suing the government, and conducting hunger strikes (*Id.* at pp. 2-3).

    **Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

9. He used hunger strikes as a last means of conveying his issues, only resulting to such a tactic when all other means of resolving his issues had failed (*Id.* at p. 3).

    **Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

10. Al-'Owhali notes that hunger strikes are not prohibited by federal regulation or BOP program statement and in fact there are special provisions in place in both the Code of Federal Regulations and BOP Program statements regarding hunger strikes (*Id.*).

    **Answer:** **Defendants admit BOP Program Statement 5562.05: <u>Hunger Strikes</u> and 28 C.F.R. §§549.60-66 generally address the issue of hunger strikes within the BOP. Defendants lack sufficient knowledge to admit or deny the balance of this allegation and therefore deny same.**

3

11. Al-'Owhali alleges that pursuant to BOP Program Statements, involuntary medical treatment is only allowed when a physician determines that an inmate's life or health is threatened (*Id.* at p. 4).

**Answer:** **Defendants deny this allegation.**

12. In the alternative, an inmate can be offered a liquid nutritional supplement, if authorized by a physician, and the acceptance of such is not documented as accepting a meal (*Id.*).

**Answer:** **Defendants admit voluntary consumption of Ensure by an inmate during a hunger strike would generally be documented in the medical records. Defendants deny the balance of this allegation.**

13. While at ADX, al-'Owhali alleges that he occasionally accepted the liquid nutritional supplement while on hunger strike, including during the month of Ramadan.

**Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

14. Al-'Owhali alleges that staff at ADX cooperated with him during religious holidays, allowing him to take the nutritional supplement before dawn and after sunset so as to not interfere with his religious observation of certain fasts, like Ramadan (*Id.* at pp. 5-6).

**Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

15. After Al-'Owhali transferred to USP-Marion, Warden Daniel Sproul allegedly violated al-'Owhali's rights by forcing him to break his fasts (Doc. 1, p. 6).

**Answer:** **Defendant Sproul denies this allegation. Defendant Hughes lacks knowledge to admit or deny this allegation and therefore denies same.**

16. In June 2021, al-'Owhali declared a hunger strike to protect what he saw as staff's attempts to force him out of his religion and/or murder him (*Id.*).

**Answer:** **Defendants admit Plaintiff's BOP medical record indicates a Hunger Strike encounter was performed on or about June 12, 2021, and on this date, Plaintiff was provided education regarding hunger strikes.**

4

> **Defendants lack sufficient knowledge to admit or deny the balance of this allegation and therefore deny same.**

17. On June 12, 2021, he had missed 45 meals and was scheduled for a medical evaluation.

> **Answer: Defendants admit Plaintiff's BOP medical record dated June 12, 2021, includes a note that Plaintiff had missed 9 consecutive meals. Defendants lack sufficient knowledge to admit or deny the balance of this allegation and therefore deny same.**

18. Eighteen days later, Dr. Pass, USP-Marion's Clinical Director, reviewed the hunger strike guidelines and determined that al-'Owhali needed medical intervention to avoid medical complications.

> **Answer: Defendants admit Plaintiff's BOP medical record dated June 30, 2021, demonstrates medical staff determined Plaintiff was in medical need of refeeding. Defendants deny the balance of this allegation.**

19. As a result, al-'Owhali was forced to take two containers of Ensure on a daily basis (*Id.* at p. 7).

> **Answer: Defendants admit Plaintiff's BOP medical record demonstrates he was seen for hunger strike encounters from June 12, 2021 through September 24, 2021, when Dr. Pass noted Plaintiff had ended his hunger strike the previous night. Defendants further admit Plaintiff's BOP medical record demonstrates Plaintiff underwent involuntary supplemental nutrition treatment during this timeframe. Except to the extent specifically admitted, Defendants deny the balance of this allegation.**

20. As the day of Arafah approached, a day of fasting held on July 19, 2021, al-'Owhali informed medical staff that he wanted to drink the nutritional supplement the evening prior to the fast in order to avoid breaking his fast (Doc. 1, p. 7).

> **Answer: Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

21. Dr. Pass submitted written authorization allowing al-'Owhali to consume two containers of Ensure the day before Arafah and two containers of Ensure the evening before Arafah in order to avoid feeding during the fasting day (*Id.*).

**Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

22. Al-'Owhali alleges that he complied with all medical orders and drank the two additional Ensures the night prior to the fast.

**Answer:** **Defendants deny this allegation.**

23. On July 19, 2021, al-'Owhali met with a nurse, who took his vitals and informed him that based on the assessment and the clinical director's determination, al-'Owhali would not need force feeding (Doc. 1, p. 7).

**Answer:** **Defendants admit documentation for July 19, 2021 at 8:19 AM in Plaintiff's BOP Medical Record indicates he was seen by RN Moulton, who noted Plaintiff "continues to require forced feedings." Defendants lack sufficient knowledge to admit or deny the balance of this allegation and therefore deny same.**

24. Later that same morning, however, the "Use of Force" team extracted al-'Owhali and took him to the healthcare unit where he was force fed by Nurse Hughes (*Id.* at pp. 7-8).

**Answer:** **Defendants admit Plaintiff's BOP Medical Record indicates Defendant RN Hughes performed involuntary nutritional supplementation for Plaintiff on July 19, 2021. Defendants deny the implied allegation that Defendant RN Hughes acted improper in performing this medical treatment on July 19, 2021. Defendants deny the balance of this allegation.**

25. Nurse Hughes informed al-'Owhali that he was being force fed at the direction of Warden Sproul, who overruled Dr. Pass's assessment and directives.

**Answer:** **Defendants deny this allegation.**

26. Hughes also informed al-'Owhali that Sproul's decision was not based on medical needs but was an attempt to leverage al-'Owhali's religious commitment and cause mental distress in order to push him off of his hunger strike (*Id.* at p. 8).

    **Answer:** **Defendants deny this allegation.**

27. Al-'Owhali alleges that he spoke to Sproul on multiple occasions and Sproul expressed that he was willing to violate an inmate's religious rights to accomplish his goals at the prison (Doc. 1, p. 8).

    **Answer:** **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

28. Al-'Owhali notes that on one occasion he complained to Sproul that he treated Muslims in the unit different than other religions, noting that Sproul labeled Muslim inmates as a disruptive and illegal group.

    **Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

29. Al-'Owhali also pointed out that some of his religious texts were banned because they regulated war and called for a society contrary to modern standards, when some Jewish texts also had violence proclamations, but inmates were allowed to receive the Jewish texts (*Id.* at pp. 8-10).

    **Answer:** **Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

30. Sproul acknowledged that he would not prohibit the Jewish texts and noted that if al-'Owhali renounced his religion and converted to ultra-orthodox Judaism, the BOP would remove his terrorist status and lower his security classification (*Id.* at p. 10).

    **Answer:** **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore**

        denies same.

31.    Sproul noted that al-Owhali's religion was seen as a security threat and, due to public sentiment towards Islam, Sproul could use al-'Owhali's religion as leverage against him without fear of repercussion (*Id.* at p. 11).

    **Answer:**    **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

32.    Sproul informed al-'Owhali that his hunger strike disturbed prison operations and Sproul would use his religion against him to stop his hunger strike (*Id.*).

    **Answer:**    **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

33.    After he was force fed, al-'Owhali alleges that Sproul approached him in his cell and reminded him that he would use his religion against him.

    **Answer:**    **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

34.    He instructed al-'Owhali to follow orders, including stopping his hunger strike (*Id.* at p. 12).

    **Answer:**    **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

35.    Al-'Owhali alleges that Sproul disrupted his fasting on eight to ten other occasions, three of which were during the most sacred fasting days.

    **Answer:**    **Defendant Sproul denies this allegation. Defendant Hughes lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

36. On each occasion, staff force fed al-'Owhali by forcing a feeding tube through his nose and stomach and delivering a nutritional supplement (*Id.* at p. 13).

> **Answer: Defendants admit the method by which Plaintiff was involuntary provided his nutritional supplement was through a feeding tube through his nose and stomach. Defendants deny the implied allegation that the medical treatment rendered was improper or in violation of the Religious Freedom Restoration Act. Defendants deny the balance of this allegation.**

37. Al-'Owhali alleges this action violated his fasting because it allowed a substance to enter his body during the fasting times (*Id.*).

> **Answer: Defendants lack sufficient knowledge to admit or deny this allegation and therefore deny same.**

38. He also alleges that on each occasion, the force feeding was not done out of medical necessity but was done specifically to violate his religious fast and coerce al-'Owhali off of his hunger strike (*Id.*).

> **Answer: Defendants deny this allegation.**

39. These actions imposed a substantial burden on al-'Owhali and the observation of his religious beliefs (*Id.*).

> **Answer: Defendants deny this allegation.**

40. Al-'Owhali alleges that Nurse Hughes participated in the violations of his religious rights because Hughes was the staff member who performed the force-feeding (*Id.* at p. 14).

> **Answer: Defendants deny this allegation.**

41. Hughes also acknowledges that he knew the force feeding was not based on medical need but rather on the orders of Warden Sproul to violate al-'Owhali's fast (*Id.*)

> **Answer: Defendants deny this allegation.**

42. Al-'Owhali alleges that Hughes acknowledged that his actions violated al-'Owhali's rights but he was just following the warden's orders so that he did not receive discipline (*Id.* at pp. 14-15).

> **Answer:** **Defendant Hughes denies this allegation. Defendant Sproul lacks sufficient knowledge to admit or deny this allegation and therefore denies same.**

43. Based on the allegations in the Complaint, the Court designates the following count

> Count 1: RFRA claim against Defendants Daniel Sproul and J. Hughes for placing a substantial burden on al-'Owhali's religious exercise by force feeding him during scheduled religious fasts.

> **Answer:** **Defendants deny the allegations in Count 1.**

### REQUEST FOR RELIEF (Doc. 1, p. 16)

> **Answer:** **No response is required to this paragraph of the Complaint. Insofar as a response is required, Defendants deny all allegations in this paragraph of the Complaint, including subsections A-F, and further deny Plaintiff is entitled to any relief.**

### CERTIFICATION AND CLOSING (Doc. 1, p. 17)

> **Answer:** **No response is required to this paragraph of the Complaint. Insofar as a response is required, Defendants deny all allegations in this paragraph of the Complaint.**

WHEREFORE, Defendants John Hughes and Daniel Sproul request the Court enter judgment in their favor and against Plaintiff and that the Court grant such further relief as deemed just and proper, including costs.

### AFFIRMATIVE DEFENSES

1. Plaintiff failed to fully exhaust his administrative remedies as required by the Prison Litigation Reform Act. As such, the Court lacks subject matter jurisdiction.

2. Each Defendant is entitled to qualified immunity and therefore cannot be held liable in his individual capacity.

10

3. Plaintiff's claims are barred by the doctrine of sovereign immunity insofar as any claim is brought against a Defendant in his official capacity.

4. Each Defendant exercised due care and diligence with respect to Plaintiff's treatment and complied with applicable BOP regulations and federal law, whether statutory or constitutional.

5. Any claim of mental and/or emotional injury by Plaintiff is barred without a prior showing of physical injury. 28 U.S.C. § 1346(b)(2); 42 U.S.C. § 1997e(e).

6. Plaintiff failed to exercise reasonable diligence and ordinary care to mitigate his damages, if any, such that any recovery must be diminished in an amount comparable thereto.

WHEREFORE, Defendants John Hughes and Daniel Sproul request the Court enter judgment in their favor and against Plaintiff and that the Court grant such further relief as deemed just and proper, including costs.

**DEFENDANTS DEMAND TRIAL BY JURY.**

    Respectfully submitted,

    STEVEN D. WEINHOEFT
    United States Attorney

    *s/ Kyle Christohper Oehmke*
    KYLE CHRISTOPHER OEHMKE
    Assistant United States Attorney
    United States Attorney's Office
    Nine Executive Drive
    Fairview Heights, IL  62208
    Phone: (618) 628-3700
    Fax: (618) 622-3810
    E-mail: kyle.oehmke@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing

**ANSWER TO PLAINTIFF'S COMPLAINT**

with the Clerk of Court using the CM/ECF system and I hereby certify I mailed the document, via the United States Postal Service, to the following non-registered participant:

ADDRESS:  Mohamed R. al-'Owhali
Reg. No. 42371-054
Big Sandy U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 2068
Inez, KY 41224

*s/ Kyle Christohper Oehmke*
KYLE CHRISTOPHER OEHMKE
Assistant United States Attorney