| | | |
|---|---|---|
| MOHAMED R. AL-'OWHALI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 3:25-cv-235-NJR |
| | ) | |
| DANIEL SPROUL and J. HUGHES, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

Defendants Dan Sproul and John Hughes ("Defendants"), by and through their attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Kyle Christopher Oehmke, Assistant United States Attorney, and for their Motion for Summary Judgment and Memorandum in Support Thereof, state as follows:

**INTRODUCTION AND PROCEDURAL POSTURE**

In 2001, Plaintiff was convicted of conspiracy to murder U.S. nationals, conspiracy to use weapons of mass destruction, conspiracy to damage or destroy U.S. property, bombing a U.S. embassy, use and attempted use of weapons of mass destruction, murder and attempted murder, using and carrying an explosive during commission of a felony, and using and carrying a dangerous device during the bombing of the U.S. embassy in Nairobi, Kenya. Declaration of Danielle Matz (attached hereto as **Exhibit 1**), ¶ 7, Attach. D; Doc. 1, ¶ 9. Plaintiff received a life sentence. *Id*.

Plaintiff brings this action pursuant to alleged violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq*. Plaintiff's sole claim is as follows:

> Count 1: RFRA claim against Defendants for placing a substantial burden on Plaintiff's religious exercise by force feeding him during scheduled religious fasts

1

Doc. 10, p. 6.  Defendants timely filed their Answer and Affirmative Defenses (Doc. 25), which raised Plaintiff's failure to fully exhaust administrative remedies.  The Court has yet to address the issue of exhaustion.

As Plaintiff has not exhausted administrative remedies on his only claim, summary judgment should be entered in favor of Defendants and against Plaintiff accordingly.

## STATEMENT OF MATERIAL FACTS

### I.     THE BOP ADMINISTRATIVE REMEDY PROCESS GENERALLY

1.     The BOP has promulgated an administrative remedy process codified in 28 C.F.R. §§ 542.10, *et seq*., and as further set forth in BOP Program Statement 1330.18 (entitled *Administrative Remedy Program*).[1]  Ex. 1, ¶ 3.

2.     This administrative remedy system has been implemented at FCI Marion and was in effect at all relevant times.  Ex. 1, ¶ 3.

3.     Administrative remedy filing procedures are outlined and explained to an inmate each time he arrives at a federal prison as part of the Admission and Orientation process.  Ex. 1, ¶ 4.

4.     All unrestricted BOP Program Statements are available for inmate access at his institution's law library.  Ex. 1, ¶ 4.

5.     Inmates are instructed where to find BOP Policy and Institution Supplements, as well as how to access the inmate Electronic Law Library.  Ex. 1, ¶ 4.

6.     Inmates are informed that if they have an issue or question for staff, they can ask in person or submit an Inmate Request to Staff by hard copy or electronically to a staff resource mailbox.  Ex. 1, ¶ 4.

---

[1] BOP Program Statements, including Statement 1330.18, are available at the following URL: https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.

7.   The BOP utilizes a system of electronic data entry and retrieval to track administrative remedies filed by inmates.  Ex. 1, ¶ 2.

8.   All formal administrative remedy requests submitted by inmates are logged and tracked in such database.  *See* Ex. 1, ¶¶ 2, 8, Attach. A.

9.   An inmate must first attempt resolution of an issue with BOP staff by submitting an informal resolution form listing his efforts to resolve the problem ("BP-8").  Ex. 1, ¶ 5.

10.   Should informal resolution of an issue prove unsuccessful, the administrative remedy filing process next consists of three steps before the inmate may proceed to district court.[2]  *See* Ex. 1, ¶ 5.

11.   First, if an inmate is not satisfied with the informal remedy response, he is required to address his complaint at the institution level ("BP-9").  Ex. 1, ¶ 5.

12.   Second, if dissatisfied with the Warden's response, the inmate may appeal to the Regional Office ("BP-10").  Ex. 1, ¶ 5.

13.   Third and finally, if dissatisfied with the Regional Office's response, the inmate may appeal to the BOP's Central Office in Washington, D.C. ("BP-11").  Ex. 1, ¶ 5.

14.   To properly exhaust an administrative remedy, an inmate must timely and properly present a claim to each level, have that remedy request accepted, and receive an actual response to that request.  Ex. 1, ¶ 6.

II.   **PLAINTIFF'S ADMINISTRATIVE REMEDIES**

15.   Plaintiff has submitted a total of 175 administrative remedy requests while incarcerated by the BOP.  Ex. 1, ¶ 8, Attach. A.

16.   Plaintiff has initiated one remedy series (Remedy ID #1096088) concerning his medical treatment at FCI Marion since 2021.  Ex. 1, ¶ 9, Attach. A.

---

[2] The general exhaustion process is also described in greater detail *infra*, pp. 6-7.

17. Plaintiff did not complete the administrative remedy process for this request. *See* Ex. 1, ¶¶ 9, 12-13.

18. Specifically, the Central Office rejected Plaintiff's appeal of such request on March 17, 2022, as Plaintiff did not a provide a copy of his BP-9 form or the Warden's BP-9 response. Ex. 1, ¶ 12.

19. Despite being given the opportunity to resubmit his appeal to the Central Office, Plaintiff did not do so and did nothing further with this remedy. *See* Ex. 1, ¶ 13, Attach. B.

20. Plaintiff initiated a remedy series (Remedy ID #1087950) relating to alleged punishment for his religious beliefs while at FCI Marion. Ex. 1, ¶ 14, Attach. A.

21 This remedy concerned Plaintiff's referral to the Special Management Unit as purported punishment for his religious beliefs, which were allegedly improperly considered as a gang affiliation. Ex. 1, ¶ 14, Attach. C.

22. Plaintiff did not complete the administrative remedy process for this request. *See* Ex. 1, ¶¶ 15-16, Attach. C.

23. Specifically, the Regional Office rejected Plaintiff's appeal of such request on December 6, 2021, as the appeal was untimely. Ex. 1, ¶ 15, Attach. C.

24. Plaintiff did nothing further with this remedy. *See* Ex. 1, ¶ 16.

25. On or about February 21, 2025, Plaintiff filed his federal lawsuit concerning alleged violation of RFRA by Defendants in 2021. *See* Doc. 1, ¶¶ 6, 9, 42, 44.

26. Specifically, Plaintiff alleges Defendants placed a substantial burden on his religious exercise by force feeding him during scheduled religious fasts. Doc. 10, p. 6; *see* Doc. 1, ¶¶ 6, 9, 42, 44.

**LAW AND ARGUMENT**

I.    **SUMMARY JUDGMENT GENERALLY**

For the reasons explained herein, Defendants seek summary judgment on Plaintiff's sole claim (Count 1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant may support the motion with materials in the record, including depositions, affidavits, and other documents. Fed. R. Civ. P. 56(c)(1); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). In assessing whether summary judgment is warranted, the court must construe all evidence, as well as the inferences reasonably drawn therefrom, in the light most favorable to the non-movant. *Spivey*, 622 F.3d at 822. Any inference drawn must be reasonable. "Inferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The non-movant, on the other hand, must respond with facts establishing a genuine issue for trial. *Id*. "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. To successfully oppose the motion, the nonmovant must present definite, competent evidence in rebuttal." *Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir. 2002). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986) (to overcome a properly supported motion for summary judgment, a nonmovant must establish a factual dispute that materially affects the outcome).

Here, there is no material fact --- let alone a genuine issue of material fact --- to establish Plaintiff exhausted administrative remedies with respect to his one claim (Count 1). Summary judgment should be entered in favor of Defendants accordingly.

## II.  BOP'S EXHAUSTION PROCESS GENERALLY

Under the Prison Litigation Reform Act, a prisoner may not file suit "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  The purposes of the exhaustion requirement are to reduce the quantity and improve the quality of prisoner suits by giving prison officials an opportunity to address complaints internally and to take corrective action before the court gets involved, by filtering out frivolous claims, and by creating an administrative record that can illuminate the dispute once it gets to court.  *Id*. at  524-25.

To satisfy the exhaustion requirement of § 1997e(a), a prisoner's grievance and appeal must be filed "in the place, and at the time, the prison's administrative rules require . . .  [and] . . . contain the sort of information that the administrative system requires."  *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted). *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006) (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits).  Sufficient exhaustion necessitates "'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Woodford*, 548 U.S. at 90 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

In order to exhaust administrative remedies for constitutional claims like those before this Court, an inmate at FCI Marion must use the BOP's Administrative Remedy Program described in 28 C.F.R. §§ 542.10, *et seq*.  Ex. 1, ¶¶ 1, 6.  Preliminarily, the inmate must attempt informal resolution with prison staff by submitting an informal resolution form (BP-8) listing their efforts to resolve the problem.  § 542.13; Ex. 1, ¶ 5.  The procedure next involves three steps. *See* Ex. 1, ¶ 5.  First, if informal attempts do not resolve the grievance, the inmate must submit a formal Administrative Remedy Request on a BP-9 form within twenty calendar days of the event or injury

giving rise to the complaint. § 542.14; Ex. 1, ¶ 5. Second, if the inmate is not satisfied with the warden's response to the Administrative Remedy Request, he may appeal that decision to the appropriate Regional Director by using a BP-10 form submitted within twenty calendar days of the date the warden signed his response. § 542.15; Ex. 1, ¶ 5. The third and final step is an appeal to the General Counsel in BOP Central Office using a BP-11 form submitted within thirty calendar days of the Regional Director's response. § 542.15; Ex. 1, ¶ 5. An appeal to the BOP Central Office is the final step in the administrative review process, and an inmate's remedies are deemed exhausted when he receives a response from the BOP General Counsel or upon the expiration of the General Counsel's response time.

### III. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

The Declaration of Danielle Matz and its supporting Attachments establish Plaintiff failed to exhaust prerequisite administrative remedies as to his sole RFRA claim. The Matz Declaration demonstrates Plaintiff's familiarity with the BOP's administrative remedy process and utilization of same. To wit, Plaintiff has submitted 175 administrative remedy requests since his incarceration by the BOP. Despite ample familiarity with the administrative remedy process, Plaintiff failed to exhaust such process as to the only remedy series (Remedy ID #1096088) arguably resembling the allegations of this lawsuit.[3]

The Court is well within its discretion to grant a motion for summary judgment and dismiss this matter without prejudice. Indeed, "[a]lthough *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust [administrative remedies] prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, allowing the Court can [sic]

---

[3] While Plaintiff referenced RFRA in another remedy series (Remedy ID #1087950), such grievance concerned Plaintiff's referral to the Special Management Unit at FCI Marion, not forced feedings. Thus, Defendants submit this grievance does not and cannot represent a means of exhaustion of the sole claim presently before this Court. Regardless, Plaintiff did not exhaust Remedy ID #1087950. *See* Ex. 1, ¶¶ 15-16, Attach. C.

consider evidence 'outside the pleadings,' such as affidavits, grievances, responses, appeals, and related documentation." *Bryant v. Nwaobasi*, 13-cv-0411-MJR-SCW, 2014 WL 552794 at *2 (S.D. Ill. Feb. 12, 2014) (citing Fed. R. Civ. P. 12(d)) (emphasis in original).

Exhaustion would not have been difficult nor inherently futile; rather, it would have permitted the BOP to engage in a specific evaluation of Plaintiff's allegations. This process serves the principle of judicial economy by ensuring the BOP has full opportunity to consider the issue before committing the Court's resources to the matter. Indeed, this district court has found for the BOP when an inmate has failed to exhaust remedies with the BOP Central Office, as Plaintiff did here. *See, e.g.*, *Bailey v. Schneider*, No. 20-cv-00802-GCS, 2023 WL 2631860, at *9-11 (S.D. Ill. Mar. 24, 2023); *Gray v. Fed. Bur. of Prisons*, No. 12–cv–985–JPG, 2014 WL 486178, at *4 (S.D. Ill. Feb. 6, 2014) ("Although Plaintiff's failure to submit an adequate grievance to the Central Office is sufficient to find that he failed to exhaust his administrative remedies, this Court also notes that Plaintiff's other grievances are deficient.") (report and recommendation subsequently adopted); *King v. Cross*, No. 12–-cv-1280–CJP, 2014 WL 185015, at *4 (S.D. Ill. Jan. 16, 2014) ("[Petitioner] easily could have resubmitted his rejected appeal to the General Counsel. But he chose to skirt the administrative procedure and file a habeas petition instead."); *Stokes v. Hollingsworth*, No. 11–cv–00187–DRH–PMF, 2011 WL 6977331, at *2-3 (S.D. Ill. Dec. 19, 2011) (report and recommendation subsequently adopted); *Hopes v. U.S. Dep't of Justice*, No. 07–cv–101 DRH, 2010 WL 1132687, at *4-5 (S.D. Ill. Mar. 2, 2010) (same).

In light of the foregoing, the Court should award summary judgment to Defendants.

## CONCLUSION

Plaintiff did not exhaust his administrative remedies on Count 1 prior to filing such claim with this Court. Accordingly, Defendants pray the Court dismisses this matter, without prejudice,

for failure to exhaust administrative remedies under the Prison Litigation Reform Act.  Defendants

further pray for all other relief the Court deems just and proper under the circumstances.

<div style="margin-left:50%">

STEVEN D. WEINHOEFT
United States Attorney

*s/ Kyle Christopher Oehmke*
KYLE CHRISTOPHER OEHMKE
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois  62208-1344
Phone: (618) 628-3700
Fax:    (618) 622-3810
Email: kyle.oehmke@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically filed the foregoing **MOTION FOR**

**SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk

of Court using the CM/ECF system and I hereby certify that I mailed the document, via the United

States Postal Service, to the following non-registered participant:

<div style="text-align:center">

Mohamed R. al-'Owhali
Reg. No. 42371-054
Big Sandy - U.S. Penitentiary
P.O. Box 2068
Inez, KY 41224

</div>

<div style="margin-left:50%">

*s/ Kyle Christopher Oehmke*
Assistant United States Attorney

</div>