Pg. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOHAMED R. AL-OWHALI

Plaintiff

vs.                                  Civil No. 3:25-cv-235-NJR

DANIEL SPROUL and
J. HUGHES,
            Defendants

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Comes now here Plaintiff Mohamed R. Al-Owhali acting pro se filing in response to Defendants Motion for Summary Judgment state as follows:

## INTRODUCTION

Plaintiff Mohamed R. Al-Owhali opposes Defendant's Motion for Summary Judgment. Defendant argue that Plaintiff failed to exhaust administrative remedies because a copy of the BP-9 Was not provided to the central office. That assertion is disputed Plaintiff presented his administrative claim to the regional office and reasonably believed no further action Was required because: (1) the regional office

Pg. 2

retained the BP-9 originals; (2) the central office already received the regional office's responses and therefore had access to the substance of Plaintiff's claim; and (3) requesting a copy from the regional office would have exceeded the central office's deadline. These facts create a genuine dispute of material fact and, at minimum, support excusing exhaustion on grounds of unavailability and equitable estoppel. Summary judgment is therefore improper. Alternatively, Plaintiff requests limited discovery under Rule 56(d) to obtain agency records necessary to resolve this factual dispute.

## STATEMENT OF MATERIAL FACTS (DISPUTED)

On or about 9-13-21, Plaintiff submitted a BP-9 administrative claim to the Warden at USP Marion. Upon Plaintiff submitting a BP-10 to the regional office along with his BP-8 and BP-9 (responses included) the regional office retained the BP-9 and did not return a copy to Plaintiff. The Central office processed and Plaintiffs claim was rejected do to Plaintiff not filing a copy of the BP-9 and the Wardens response. Plaintiff did not request a duplicate BP-9 from the Regional Office because (a) the regional office was not supposed to retain his copy, (b) Plaintiff reasonably believed the agency already had the BP-9, and (c) requesting a copy would have delayed or caused Plaintiff to miss the Central Office deadline. The Defendants has not produced conclusive records showing Plaintiff never submitted a BP-9 to the

Pg.3

Regional Office; the dispute over whether Plaintiff filed the BP-9 and whether exhaustion should be excused is material and genuine.

## ARGUMENT

I.   Plaintiff asserts that pursuant to 42 U.S.C. 1997 e (a); Porter v. Nussle, 534 U.S. 516, 524-25 (2002) under the Prison Litigation Reform Act, a prisoner may not file suit until such administrative remedies as are available are exhausted. This gives prison officials the opportunity to address complaints and to take corrective action before the court gets involved. Plaintiff now asserts that he has exhausted his remedies before filing suit.

Plaintiff asserts that to satisfy the exhaustion requirement of 1997 e (a) a prisoner's grievance and appeal must be filed in the place, and at the time, the prison's administrative rules require and contain the sort of information that the administrative system requires. Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002) Plaintiff asserts the record will reflect this requirement was met. Also see Woodford v. Ngo, 548 U.S. 81, 90-93 (2006) (requiring proper exhaustion, that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits) Plaintiff asserts that the record will reflect this requirement was met.

Pg.4

Plaintiff asserts that in order to exhaust administrative remedies for constitutional claims like those presently before this court, an inmate at FCI Marion must use the BOP's Administrative Remedy Program described in 28 C.F.R. 542.10. Preliminarily the inmate must attempt informal resolution with prison staff by submitting an informal resolution form (BP-8). Plaintiff asserts that the record will reflect this requirement was met. Next if informal attempts do not resolve the grievance, the inmate must submit a formal administrative remedy request (BP-9) within twenty calendar days of the event or injury giving rise to the complaint. Plaintiff asserts that the record will reflect this requirement was met. If the inmate is not satisfied with the warden's response he may appeal the decision to the Regional Director by using a BP-10 form within twenty calendar days of the date the Warden signed his response. Plaintiff asserts that the record will reflect this requirement was met. The final step is an appeal to the General Counsel in BOP central office using a BP-11 form submitted within thirty calendar days of the Regional Director's response. Plaintiff asserts that the record will reflect this requirement was met as well. Plaintiff asserts that once these requirements are met and he recieves a response from the BOP General Counsel or upon the expiration of the General Counsel's response date then Plaintiff's remedies are deemed exhausted.

Pg.5

## II. PLAINTIFF DID EXHAUST HIS ADMINISTRATIVE REMEDIES

Plaintiff asserts that the Declaration of Danielle Matz and it's supporting attachments does not establish Plaintiff failed to exhaust prerequisite administrative remedies as to his RFRA claim. Infact the Danielle Matz Declaration supports the facts of the Plaintiff. The Defendants make reference to the Plaintiffs past remedy, (Remedy ID # 1087950) inwhich this remedy is not part of the Plaintiffs suit. The Plaintiff's suit is solely based on (Remedy ID # 1096088) and the record will reflect that the Defendants assertion that the Plaintiff failed to exhaust his remedies is with out merit. Defendants argue that the Plaintiff's failure to have resubmitted the rejected appeal to the General Counsel inwhich Plaintiff chose to skirt the administrative procedure and file a habeas petition instead warrants this court to dismiss the matter. Plaintiff asserts that he substantially complied with the requirment(s) because the claim was filed with the agency (General Counsel) and the Plaintiff could not produce a BP-9 response because the agency retained the original copies. Plaintiff contends that the record will reflect that Plaintiff fulfilled his obligation when he filed his BP-8, BP-9, BP-10 and last the BP-11. Plaintiff contends that at any stage of the Administrative Remedy Process an inmates grievance can be denied for various reasons. In the

Pg. 6

instant case Plaintiff's BP-11 was simply denied based on an administrative defect caused by the agency's record retention practice and thus should not bar Plaintiffs access to court. Plaintiff also contends that when the Central Office suggested that the Plaintiff could resubmit his claim and include the BP-9 along with the BP-9 response it would have done nothing more than to delay the process. This fact is based because the Regional Office retained the original copies from the previously filed BP-9 and the Central Office could have retained those copies from the Regional office. Futhermore Plaintiff was not obligated to resubmit the BP-11 and the record will reflect that upon review of 28 C.F.R. 542.10 - 542.19 as well as BOP Program Statement 1330.18 entitled: (Administrative Remedy Program) You will find that to not resubmit a remedy that has already been filed only goes to the detriment of the inmate when and if the agency informs the inmate that to not resubmit will be construed as a waiver and or non exhaustion of the Administrative Remedy process. In the instant case Plaintiff was only given a suggestion to resubmit the BP-11 and Plaintiff chose not to resubmit do to the fact that he was confident that the greater weight of his evidence would be heard in this court.

## III.   WHAT IF PROCEDURAL REQUIREMENTS ARE NOT CLEAR

Plaintiff contends the Second Circuit had held

Pg. 7

before Woodford that a prisoner who acted reasonab when the rules were not clear presented special circumstances justifying his failure to exhaust properly, even if he turned out to be wrong, and other courts have agreed or have held remedies unavailable under those circumstance since Woodford, courts have continued to hold that prisoners' cases cannot be dismissed for non-exhaustion where it was unclear what they had to do to exhaust, either because the rules were not clear, or because the actions or instructions of officials (often in violation of their own rules) created confusion in a particular case. There are cases where the court has declined to dismiss for non-exhaustion because the prisoner lacked sufficient knowledge of the facts to comply with the grievance rules. Frequently the actual practice in prison grievance systems diverges from the formal written procedure. Courts have held that a prisoner who complies with the informal practice has satisfied the exhaustion requirement and have refused to enforce compliance with supposed grievance rules that do not appear in the written policy. See Dole v. Chandler, 438 F.3d 804, 811-12 (7th Cir. 2006) (holding a prisoner has exhausted when he did everything necessary to exhaust but his grievance simply disappeared, and he received no instructions as to what if anything to do about it); See Westefer v. Snyder, 422 F.3d 570, 580 (7th Cir. 2005) (holding prison officials did not establish a failure to exhaust available remedies where their policies did not clearly identify the proper remedy and there was no "clear route" for prisoners to challenge certain decisions) See Ouellette v. Maine State Prison, 2006

Pg-8

WL 173639, 3-4 (D.Me, Jan 23, 2006) denying summary judgment to defendants where plaintiffs failure to exhaust was attributable to grievance staff's procedural deviations) See: Shaheed-Muhammad v. Dipaolo, 393 F.Sup 2d 80, 97 (D.Mass 2005) ("Having failed to abide by the strictures of their own regulations, defendants should not be allowed to claim plaintiffs non compliance as a bar.) Plaintiff contends summary judgment is improper where there is genuine dispute of material fact. The Defendants bears the burden of establishing that exhaustion did not occur. Plaintiffs sworn statements that he submitted the BP-9 to the regional office and that the Regional office retained originals (See affidavit Plaintiffs sworn statements Exhibit #1) create a genuine factual dispute that precludes summary judgment. Plaintiff contends exhaustion is satisfied or excused because BP-9 was effectively unavailable. Exhaustion requires presenting claims for agency consideration, not perfect paperwork. Where an agency's retention of a claimant's BP-9 made the document unavailable to Plaintiff, exhaustion should be deemed satisfied or excused. The Central Office had access to the regional office's responses demonstrating that the agency had the substance of Plaintiff's claim so the technical absence of a duplicate BP-9 should not bar judicial review. (See exhibit #2 Agency vital Records) Plaintiffs asserts that equitable estoppel and waiver should apply. The Regional office's practice of retaining BP-9 originals and the Central Offices consideration of Regional responses justify estopping Defendants from relying on the technical absence of a duplicate BP-9

Pg. 9

to defeat Plaintiffs claim. Plaintiff reasonably relied on the agency's handling and the Central office's record to his detriment. Plaintiff contends that the Central office request for the BP-9 and the Warden's response should be denied because the BOP agency has a copy of the BP-9 and response maintained in their computerized system (See: Exhibit #3 Declaration of Danielle Matz) thus making the request a non critical procedure. Under the Turner v. Safley standard, which requires restrictions on prisoners constitutional rights to be reasonably related to legitimate penological purposes. The decision lays a foundation for striking down extreme grievance rules that cause great difficulties in complying without serving a useful and legitimate purpose. See: Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987). Woodford itself said that proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. This implies that there are some procedural rules that are not critical and whose violation does not threaten the system's functioning. That in turn would imply that a failure to follow such rules would not be a failure to exhaust. In light of the foregoing, the court should not award summary judgment to Defendants.

## Conclusion

Plaintiff prays and request that the court deny Defendant's Motion for Summary Judgment in full. In the alternative, Plaintiff request that the motion be defferred under Rule 56(d) and that limited discovery be allowed

Pg. 10

(production of intake logs and a declaration of the Regional office records custodian, or an evidentiary hearing). Plaintiff further pray for any and all other relief the Court deems just and appropiate.

Pg. 1

# <u>RESPONSE TO STATEMENT OF MATERIAL FACTS</u>

## I. <u>The BOP Administrative Remedy Process Generally</u>

1. The Plaintiff admit the BOP has promulgated an administrative remedy process codified in 28 C.F.R. 542.10 and as further set forth in BOP program statement 1330.18

2. The Plaintiff does admit this administrative remedy has been implemented at FCI Marion and was in effect at all relevant times.

3. The Plaintiff does admit that administrative remedy filing procedures are outlined and explained to an inmate each time he arrives at a federal prison as part of the Admission and Orientation process.

4. The Plaintiff does admit that all unrestricted BOP Program Statements are available for inmate access at his institutions law library.

5. The Plaintiff does admit that inmates are instructed where to find BOP Policy and Institution Supplements, as well as how to access the inmate Electronic Law Library.

6. The Plaintiff does admit that inmates are informed that if they have an issue or question for staff, they can ask in person or submit an Inmate Request to staff by hard copy or electronically to a staff resource mailbox.

Pg.2

7. The Plaintiff does admit that the BOP utilizes a system of electronic data entry and retrieval to track administrative remedies filed by inmates.

8. The Plaintiff does admit that all formal administrative remedy requests submitted by inmates are logged and tracked in such database.

9. The Plaintiff does admit that an inmate must first attempt resolution of an issue with BOP staff by submitting an informal resolution form listing his efforts to resolve the problem. (BP-8)

10. The Plaintiff does admit that should informal resolution of an issue prove unsuccessful, the administrative remedy filing process next consists of three steps before the inmate may proceed to district court.

11. The Plaintiff does admit that first, if an inmate is not satisfied with the informal remedy response, he is required to address his complaint at the institution level. (BP-9)

12. The Plaintiff does admit that second, if dissatisfied with the Warden's response, the inmate may appeal to the Regional office. (BP-10)

13. The Plaintiff does admit that third and finally, if dissatisfied with the Regional office's response, the inmate may appeal to the BOP's Central Office in Washington, D.C. (BP-11)

14. The Plaintiff does admit in part and does dispute in part that to

Pg. 3

properly exhaust an administrative remedy, an inmate must timely and properly present a claim to each level which Plaintiff does admit, have that remedy request accepted which Plaintiff does admit, and receive an actual response to that request which Plaintiff does dispute. This dispute is based on the remedy process codified in 28 C.F.R. 542.10 and in BOP Program Statement 1330.18. Plaintiff asserts that pursuant to 28 C.F.R. 542.10 and BOP Program Statement 1330.18 an inmates failure to receive a response does not solely deem his remedy not properly exhausted. Plaintiff asserts that at each remedy level: BP-8, BP-9, BP-10, and BP-11 there is an allotted time period and if the Plaintiff does not receive a response or if the response is in part the Plaintiff should not be held liable for material he did not receive but is still part of the BOP record.

## II.    Plaintiffs Administrative Remedies

15. The Plaintiff does admit that this Plaintiff has submitted a total of 175 Administrative Remedy Request while incarcerated by the BOP

16 The Plaintiff does admit that he has initiated one remedy series (Remedy ID # 1096088) concerning his medical treatment at FCI Marion since 2021.

17. The Plaintiff does dispute that he did not complete the administrative remedy process for this request. Plaintiff asserts that you will, in the record, find that Plaintiff did complete the administrative remedy process. The Plaintiff disputes that

Pg. 4

even if an inmate files a administrative remedy and it was denied based on insufficient documents the Defendants can not take it upon themselves to construe Plaintiff did not exhaust his remedies and or did not complete the administrative remedy process.

18. The Plaintiff does admit in part and does dispute in part that the Central office rejected Plaintiff's appeal of such request on March 17, 2022, as Plaintiff did not provide a copy of his BP-9 form or the Warden's BP-9 response. Upon review the record will show that it is the duty of the Regional Office upon submitting their response to the Plaintiff a copy of all administrative original remedy request filed by Plaintiff along with any and all responses from BP-8, BP-9 and BP-10. If these forms are not returned back to the Plaintiff the Plaintiff should not be held liable in which the Defendants can construe his remedy request not complete or that Plaintiff did not exhaust his remedies.

19. The Plaintiff does admit in part and does dispute in part that despite being given the opportunity to resubmit his appeal to the Central Office, Plaintiff did not do so and nothing further with this remedy. The Plaintiff chose to not resubmit his appeal to the Central Office because he was still without the BP-9 and Warden's response from the Regional Office in which it was there (Regional office) duty to have sent the Plaintiff those copies. Upon review of 28 C.F.R. 542.10 - 542.19 (in its entirety) you will find that at times the BOP does afford inmates the opportunity to resubmit an appeal but it is only an option thats afforded

Pg. 5

to inmates during the appeal process and when the issue concerning resubmittion is not critical an inmate can choose to not resubmit and proceed further in the appeal process or the court(s).

20. The Plaintiff does admit that he initiated a remedy series (Remedy ID # 1087950) relating to alleged punishment for his religious beliefs, which were allegedly improperly considered as a gang affiliation.

21. The Plaintiff does admit this remedy concerned Plaintiffs referral to the Special Management Unit as purported punishment for his religious beliefs, which were allegedly improperly considered as a gang affiliation.

22. The Plaintiff does admit that he did not complete the administrative remedy process for this request.

23. The Plaintiff does admit that specifically, the Regional Office rejected Plaintiff's appeal of such request on December 6, 2021 as the appeal was untimely.

24. The Plaintiff does admit that he did nothing further with his remedy.

25. The Plaintiff does admit that on or about Feb. 21, 2025, Plaintiff filed his federal lawsuit concerning alleged violation of RFRA by Defendants in 2021.

26. The Plaintiff does admit that specifically, Plaintiffs alleges

Pg. 6

Defendants placed a substantial burden on his religious exercise by force feeding him during scheduled religious fasts.

In the United States Souther- District Court of Illinois

Mohamed R. Al-Owhali (plaintiff)

v

Daniel Sprout and John Hughs (Defendant)

Civil No. 3:25-cv-235-NJR

Rule 56(d) Declaration

I Mohamed R. Al-Owhali declare under the penalty of perjury:

1. I cannot currently present facts to justify my opposition to the defendants motion for summary judgement because the governments record concerning receipt, retention, and transmission of my BP9 in the governments exclusive custody and control

2. I requested limited discovery to obtain A. Regional office intake/retention logs covering Administrative remedy 1096088 B. Declaration of the regional office records custodian responsible for processing Administrative remedy 1096088. C. Declaration of Central office regarding the electronic availability of BP9 109608F1 to them

3. This discovery is necessary to show whether my BP9 1096088-f1 was submitted and all the copy were retained by the regional office and whether the central office had access to the substance of my administrative filing. Without it I can't fully rebute defendants contention that I failed to exhaust administrative remedies.

Executed on 5-7-2026

Signature:

Printed name: Mohamed R. Al-Owhali

In the United States District Court
for the Southern District of Illinois

Mohamed R. Al-Owhali (Plaintiff)

v.

Daniel Sproul and John Hughs (Defendant)

Case no: 3:25-cv-000235 NJR

I Mohamed R. Owhali declare under the penalty of perjury under the law of the United States of America that the following is true and correct:

1. I am the plaintiff in the above caption action.

2. As a matter of my practice in filing administrative remedy, I attached copies of my BP9 and BP10 that was sent to the regional and central offices. They retained copies and sent me copies back.

3. I did the same with administrative remedy 109608E-F1 when I filed my BP10 to the regional office.

4. When the regional office sent a response, they retained all copies of the BP9

5. When I filed my BP11 to the central office, I couldn't include a copy of my BP9 because the regional office kept it and because the central office has it on electronic file and they will investigate the matter themselves.

6. The central office rejected my BP11 because I didn't include a copy of the BP9. I couldn't fulfill this request because I didn't have a copy of my BP9 and couldn't explain it because the official who did the screening process will rejected it without looking at my explanation

7. I believe that I exhausted my administrative remedies or that what I needed wasn't available to me

8. I write this affidavit in good faith hoping to explain why I didn't include my BP9 in my BP11, and why I didn't proceed any further after recieving my rejection from the Central office.

Executed on 5-7-2026

signature :

Printed name: Mohamed R. Al-Owhali

Certificate of Service

I hereby certify that on May 22 2026 I filed the foregoing Motion To Respond To The Defendants' Motion For Summary Judgment. With the Clerk of Court and I hereby certify that I mailed the document, via the United States Postal Service, to the following participant:

Steven D. Weinhoeft
United States Attorney

Kyle Christopher Oehmke
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344

Date: 5-22-2026

To: Court Clerk

Fr: Mr. Mohamed R. Al-Owhali

Re: Filing of Motion

    Dear Court Clerk,
enclosed you will find for your filing one copy of Plaintiffs Response To Motion for Summary Judgment. Can you please file a copy with this court and with any and all necessary parties who are involved.

        Submitted By:
        Petitioner acting pro se
        Mohamed R. Al-Owhali





U.S. Department of Justice
United States Attorneys Office
*Southern District of Illinois*

*Nine Executive Drive*
*Fairview Heights, IL 62208*

Official Business



Received From Post Office

Date: 4-22-24

Time: 9 40 A

Mail Room Staff

_____

Vetted by SIS

Date: _____

Time: _____

Delivered to Inmate

Date: 4-23-24

Time: 725A

Inmate Signature

_____

Staff Delivering to Inmate

_____

A3 319L

Mohamed R. al-'Owhali
Reg. No. 42371-054
Big Sandy - U.S. Penitentiary
P.O. Box 2068
Inez, KY 4122

SPECIAL (OR LEGAL) MAIL--
Open in Presence of Inmate

Alowhali Mohamed
4237/054
USP Big sandy
PO Box 2067
Inez, ky 41224



To The Clerk of The Court
United State distrct Court
750 Missouri AVE
East St. Louis, ILL 62201

Legal mail

MAIL CLEARED US MARSHALS

Case 3:25-cv-00235-NJR    Document 29    Filed 06/03/26    Page 24 of 25    Page ID #296





RECEIVED

JUN 0 3 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE