# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOHAMED R. AL-'OWHALI,            )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        Case No. 3:25-cv-00235-NJR
                                  )
DANIEL SPROUL and JOHN HUGHES,    )
                                  )
            Defendants.           )

**SUPPLEMENTAL DECLARATION OF DANIELLE MATZ**

In accordance with the provisions of 28 U.S.C. § 1746, I, Danielle Matz, make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled and numbered cause:

1.      I am employed by the Federal Bureau of Prisons ("BOP") as Administrative Officer at the BOP's North Central Regional Office. I have held this position since February 2024. I also serve as Administrative Remedy Clerk at the BOP's North Central Regional Office and have done so since February 2024. I have been employed by the BOP since September 2007.

2.      I am familiar with BOP policies about the administrative remedy program. In my position as Administrative Officer and Administrative Remedy Clerk, I process administrative remedy appeals submitted to the Regional Director in the North Central Regional Office. I have access to records created in the regular course of business of the BOP. This includes records maintained in the BOP's electronic database (called SENTRY) and hard copy records maintained at various BOP facilities. All records attached to this Declaration are true and accurate copies of BOP records kept in the regular course of business.

3.      When informal attempts at resolution of an issue are not successful, an inmate must submit a Request for Administrative Remedy on a BP-229 (BP-9) form to the institution

1

staff member designated to receive said form.[1] 28 C.F.R. § 542.14; *See* Attachment A, Program Statement 1330.18: <u>Administrative Remedy Program</u> at p. 5. This form (BP-9/BP-229) includes four carbon-copy pages. Upon receipt, the Warden provides a response to the BP-9 and maintains one carbon-copy page of the BP-9 for BOP records, and one copy of the response. The Warden sends the inmate: (1) the remaining 3 carbon-copy pages of the BP-9, which allows them one carbon-copy to retain, and one carbon-copy to submit with a potential appeal to the Regional Director and Central Office, if necessary; and (2) 3 copies of the Warden's response, which again, allows the inmate to retain one copy for their records and, if necessary, submit a copy with a potential appeal to the Regional Director and Central Office.

4.      The next step in the process requires the inmate to send a Regional Administrative Remedy Appeal on a BP-230 (BP-10) form to the appropriate Regional Director.[2] This form (BP-10/BP-230) includes four carbon-copy pages. The inmate must also provide a complete copy or duplicate original of the BP-9 and the Warden's response. 28 C.F.R. § 542.15; Attachment A at p. 7. If the Appeal is accepted (rather than rejected), the Regional Director provides a response to the BP-10, and maintains: (1) one carbon-copy page of the BP-10; (2) one copy of the BP-9 and the Warden's response to the BP-9; and (3) one copy of the Regional Director's response. The Region sends the Warden of the inmate's institution one carbon-copy of the BP-10, and sends the inmate: (1) the remaining 2 carbon-copy pages of the BP-10; and (2) two copies of the Regional Director's response. If an inmate were to submit multiple copies of his BP-9 or response to his BP-9, the Regional Office would only retain the one copy required

[1] Although often referred to as a "BP-9" in the Code of Federal Regulations and colloquially, this form is designated as a BP-229. BP-9 and BP-229 are terms used interchangeably to refer to the form captioned "Request for Administrative Remedy."

[2] Although often referred to as a "BP-10" in the Code of Federal Regulations and colloquially, this form is designated as a BP-230. BP-10 and BP-230 are terms used interchangeably to refer to the form captioned "Regional Administrative Remedy Appeal."

2

for the Regional Office records, and the remaining copies would be returned to the inmate.  The Regional Office does not provide these documents or the BP-9 (and any response to the BP-9) to the BOP Central Office, which is the inmate's responsibility.

5.    For the final step in the process, the inmate must send a Central Office Administrative Remedy Appeal on a BP-231 (BP-11) form to the National Appeals Administrator, Office of General Counsel located in BOP's Central Office[3]. This form (BP-11/BP-231) includes four carbon-copy pages. The inmate must also provide a complete copy or duplicate original of the institution and regional filings. 28 C.F.R. § 542.15; Attachment A at p. 7. If the Appeal is accepted (rather than rejected), the National Appeals Administrator provides a response to the BP-11, and maintains: (1) one carbon-copy page of the BP-11; (2) one copy of the institution and regional filings; and (3) one copy of the National Appeals Administrator's response. The Regional Office and Warden are each sent one carbon-copy of the BP-11, and the inmate is sent: (1) the remaining carbon-copy of the BP-11; and (2) one copy of the National Appeals Administrator's response.

6.    It is the inmate's responsibility to maintain copies of any BP-9, BP-10, BP-11 and any responses thereto, and provide them as required by 28 C.F.R. § 542.15 and Program Statement 1330.18.

7.    If an inmate misplaces his copy or copies of a BP-9, he can request another copy through members of his Unit Team (counselor, case manager, or unit manager). An inmate can also submit an Inmate Request to Staff ("cop-out") or request a copy of a BP-9 in-person during mainline through any executive staff member (Administrative Remedy Clerk, Warden Secretary, Associate Warden Secretary, Executive Assistant, Associate Warden, or Warden).

---

[3] Although often referred to as a "BP-11" in the Code of Federal Regulations and colloquially, this form is designated as a BP-231. BP-11 and BP-231 are terms used interchangeably to refer to the form captioned "Central Office Administrative Remedy Appeal."

Executed this _____17th_____ day of June 2026.

_____

Danielle Matz
Federal Bureau of Prisons

# ATTACHMENT A



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI:          OGC/LIT
NUMBER:       1330.18
DATE:         January 6, 2014

# Administrative Remedy Program

*/s/*
*Approved*:  Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE  §542.10**

**a.  Purpose.  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq.  These procedures are provided in Section 16 of this Program Statement.

**b.  Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c.  Statutorily-mandated Procedures.  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

2. **PROGRAM OBJECTIVES.**  The expected results of this program are:

■  A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.
■  Each request, including appeals, will be responded to within the time frames allowed.
■  A record of Inmate Administrative Remedy Requests and Appeals will be maintained.
■  Bureau policies will be more correctly interpreted and applied by staff.

3. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

P1330.17        Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06        Federal Tort Claims Act (8/1/03)
P4500.08        Trust Fund/Deposit Fund Manual (5/4/12)
P5212.07        Control Unit Programs (2/20/01)
P5214.04        HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)
P5264.08        Inmate Telephone Regulations (1/24/08)
P5270.09        Inmate Discipline Program (7/8/11)
P5324.11        Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)
P5890.13        SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation
28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c.  Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

■  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271
■  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

**a.  The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

**(1)  Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;**

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2)  Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3)  Conduct an investigation into each Request or Appeal;**

**(4)  Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5)  The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk.  The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)  The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure.  The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates.  The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from

SENTRY promptly after delivery to the inmate.  CCMs are responsible for this function for inmates under their supervision.

**b.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6.  **RESERVED**

7.  **INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution.  Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy.  Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff.  These procedures may not operate to limit inmate access to formal filing of a Request.

**b.  Exceptions.  Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part.  An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

8.  **INITIAL FILING §542.14**

**a.  Submission.  The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy

Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b.  Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required.  If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request.  Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**c.  Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

- Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.
- Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.
- Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

**The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits.  Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.**

**d.  Exceptions to Initial Filing at Institution**

**(1)  Sensitive Issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.**

**(2)  DHO Appeals.  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.**

See the Program Statement **Inmate Discipline Program**.

**(3)  Control Unit Appeals.  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.**

See the Program Statement **Control Unit Programs**.

**(4)  Controlled Housing Status Appeals.  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.**

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

**9.  APPEALS  § 542.15**

**a.  Submission.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional**

**Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  Valid reasons for delay include those situations described in §542.14(b) of this part.  Appeal to the General Counsel is the final administrative appeal.**

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office.  The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.  Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b.  Form**

**(1)  Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response.  Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses.  Appeals shall state specifically the reason for appeal.**

**(2)  An inmate may not raise in an Appeal issues not raised in the lower level filings.  An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3)  An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page.  The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal).  The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c.  **Processing**.  The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10.  **ASSISTANCE §542.16**

**a.  An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff**.

**b.  Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11.  **RESUBMISSION §542.17**

**a.  Rejections.  The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b.  Notice.  When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1)  **Sensitive Submissions**.  Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate.  Only a rejection notice will be provided to the inmate.  However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2)  **Defects**.  Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3)  **Criteria for Rejection**.  When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise.  Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or

problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c.  Appeal of Rejections.  When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level.  The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing.  The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

12.  **RESPONSE TIME §542.18**

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level.  Staff shall inform the inmate of this extension in writing.  Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office.  Notice of extension ordinarily is made via SENTRY notice.

13.  **REMEDY PROCESSING**

a.  **Receipt**.  Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form.  Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number.  The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be

withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member.  If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request.  If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b.  **Investigation and Response Preparation**.  The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation.  Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.  Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings.  Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided.  Such documents and notes shall be retained with the case file copy.  When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal.  Requested staff shall provide such statements promptly.  For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c.  **Responses**.  Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision.  The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn.  This abstract should be complete, but as brief as possible.  The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information.  The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act.  Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d.  **Response Time Limits**. Responses shall be made as required in Section 12 of this Program Statement.

e.  **Index Completion**.  When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in

Attachment A.  Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter.  The abstract shall be taken from the response's first paragraph.  Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted.  For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f.  **Response Distribution**.  For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material.  Three copies shall be returned to the inmate.  An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office.  One copy shall be sent to the Warden at the original filing location.  The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate.  One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

g.  **File Maintenance**.  The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prisons staff, inmates, and the public.  Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy.  Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file.  Each location shall maintain copies of supporting material and investigation notes with the case file.

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

14.  **ACCESS TO INDEXES AND RESPONSES §542.19**

**Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below.  Each institution shall make available its index, and the indexes of its regional office and the Central Office.  Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office.  The Central Office shall make available its index and the indexes of all institutions and regional offices.  Responses may be requested from the location where they are maintained and must be identified by**

**Remedy ID number as indicated on an index.  Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages.  Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

## 15.  RECORDS MAINTENANCE AND DISPOSAL

a.  **Disposal Authority**.  The authority for Administrative Remedy records disposal is the "job number" NC1-129-83-07 provided by the National Archives.

b.  **Administrative Remedy Indexes**.  SENTRY Administrative Remedy indexes shall be maintained in computer-accessible form for 20 years, then destroyed.  Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c.  **Administrative Remedy Case Files**.  Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module (July 1990), at the end of each calendar year (beginning at end of 1993), run SENTRY index retrieval transactions to identify the lowest case number for cases answered (status = cl* and status date in the appropriate range) during the calendar year ended three years previously.  Cases below that number must be destroyed.  Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

**YEAR OF CASE #          DESTROY AT END OF**

## 16.  ADMINISTRATIVE REMEDY PROCEDURES UNDER THE PRISON RAPE ELIMINATION ACT (PREA)

Title 42 U.S.C. §15607 (a) required the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape.  Title 42 USC § 15607(b) states that the national standards shall apply immediately to the Federal Bureau of Prisons upon adoption of the final rule.  The final rule is published in Title 28 C.F.R. Part 115. This section only addresses administrative remedy procedures in relation to issues of sexual

abuse, and shall not constitute the sole response of the agency to allegations of sexual abuse. Appropriate steps to address the safety and security of inmates shall be made in accordance with the other provisions of the PREA regulations, and the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

### §115.52  Exhaustion of administrative remedies.

### (a)  An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.

The Federal Bureau of Prisons has an administrative remedy system, and therefore section 115.52 (a) does not apply.  The following sections, 115.52 (b) through 115.52 (g), apply to inmates seeking a formal review of issues relating to sexual abuse.  For any issue not specified in sections 115.52 (b) through 115.52 (g) below, the administrative remedy system outlined in Sections 1 through 15 of this Program Statement applies.

### (b)(1)  The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.

"Sexual abuse" is defined for the purposes of this section in 28 C.F.R. § 115.6, as referenced in the Bureau's policy on Sexually Abusive Behavior Prevention and Intervention Program.

Administrative remedies regarding allegations of sexual abuse may be filed at any time.  For all other issues, the 20 calendar day period specified in Section 8 of this Program Statement shall be followed.  Accordingly, administrative remedies regarding an allegation of sexual abuse shall not be rejected as untimely under Section 11 of this Program Statement, above.

Once filed, the inmate should follow the time requirements for appeal, as stated in Section 9 of this Program Statement, above.

### (2)  The agency may apply otherwise-applicable time limits on any portion of a grievance that does not allege an incident of sexual abuse.

If the inmate includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue.

### (3)  The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.

Inmates are not required to attempt informal resolution under Section 7 of this Program Statement, above, regarding allegations of sexual abuse.

### (4)  Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.

**(c)  The agency shall ensure that**

**(1)  an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and**

**(2)  such grievance is not referred to a staff member who is the subject of the complaint.**

Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.  Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

**(d)(1)  The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.**

**(2)  Computation of the 90-day time period shall not include time consumed by inmates during the course of an administrative appeal.**

**(3)  The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.**

**(4)  At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly-noticed extension, the inmate may consider the absence of a response to be a denial at that level.**

Time frames in this section are consistent with Section 12 of this Program Statement, above.

**(e)(1)  Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.**

**(2)  If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.**

**(3)  If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.**

This section is applicable only to allegations of sexual abuse; inmates must personally file administrative remedies relating to other issues.

The inmate's approval of the remedy filed on his or her behalf shall be documented, and include the inmate's signature.  An inmate's decision to decline to have the remedy processed on his or her behalf should also be documented, and include the inmate's signature.  The documentation should be retained in the agency Administrative Remedy File at the appropriate level and on Sentry in accordance with Section 13 of this Program Statement.

Responses to third party remedies should be provided to the inmate who is the subject of the remedy.

An inmate is required to personally file any subsequent appeal.  However, the inmate may receive assistance in preparing the appeal in accordance with Section 10 of this Program Statement, above.

**(f)(1) The agency shall establish procedures for the filing of an emergency grievance where an inmate is subject to a substantial risk of imminent sexual abuse.**

This section applies when an administrative remedy alleges a substantial risk of imminent sexual abuse.  If a remedy meets both of these criteria, the remedy will receive expedited processing, as described below.

Section 12 of this Program Statement provides for an "emergency" administrative remedy as required by section 115.52(f).  An expedited BP-9 (BP-229) response shall be provided if a remedy is determined to be of an emergency nature which threatens the inmate's immediate health or welfare.  *See* 28 C.F.R. § 542.18.

The inmate shall clearly mark "Emergency" on the BP-9 (BP-229), and explain, in writing, the reason for filing as an emergency administrative remedy under this section.

If an inmate files an emergency administrative remedy with the Warden, the local Administrative Remedy Coordinator shall make a determination as to whether the remedy alleges a substantial risk of imminent sexual abuse.  If the local Administrative Remedy Coordinator agrees that the administrative remedy meets the criteria for an emergency administrative remedy, the request shall be accepted, and receive expedited processing as stated below.

If the remedy is rejected for failing to meet the criteria of an emergency grievance under this section, a rejection notice will be provided to the inmate, and the remedy will be processed in accordance with the usual time frames indicated above.

**(2)  After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within five calendar days.  The initial response and final agency decision shall document the agency's determination whether the inmate is in**

**substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.**

If an inmate files the emergency grievance with the institution under Section 12 of this Program Statement, above, alleging a substantial risk of imminent sexual abuse, an expedited BP-9 (BP-229) response shall be provided within 48 hours. Best efforts to provide BP-10 (BP-230) and BP-11 (BP-231) responses within five calendar days should also be made in accordance with the provisions on exhaustion referenced above. If the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level.

Inmates may also file "sensitive" administrative remedies under Section 8 of this Program Statement, above, regarding allegations of sexual abuse. If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Director. *See* 28 C.F.R. § 542.14 (d) (1). "Sensitive" grievances should be processed in accordance with Section 8 and Section 11 of this Program Statement, and the expedited response times specified in this section do not apply.

**(g)  The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and false allegations. Allegations of false reports will be considered by staff in accordance with the procedures and standards of the Inmate Discipline Program policy.

17.  **INSTITUTION SUPPLEMENT**

Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.